Violetta Nadine BANCROFT, and George E. Bancroft, Plaintiffs,

v.

The TECUMSEH PRODUCTS COMPANY, Tecumseh Division Insurance Plan, through its designated Plan Administrator, Tecumseh Products Company, Defendant.

Civil Action No. 95–40466.

United States District Court, E.D. Michigan, Southern Division.

Dec. 20, 1996.

Shari M. Borsini, Dickinson, Wright, Moon, Vandusen & Freeman, Bloomfield Hills, MI, for defendant.

Laurie S. Longo, Ann Arbor, MI, for plaintiffs.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This is an action governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Before the court are cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Plaintiffs, Violetta and George Bancroft, ("Plaintiffs"), filed their motion for summary judgment on October 18, 1996. The defendant, Tecumseh Products Company, ("Defendant"), also filed its motion for summary judgment on October 18, 1996. Oral argument was heard on December 11, 1996. For the reasons discussed below, this court will grant plaintiffs' motion

for summary judgment and deny the defendant's motion for summary judgment.

## I. Background

Mrs. Bancroft is a covered beneficiary of the ERISA health benefit plan for hourly retirees that is sponsored by her husband's employer, Tecumseh Products Company. Prior to corrective surgery plaintiff suffered from macromastia [1] causing severe and chronic back and neck pain, significant stoop, shoulder grooving and paresthesia of the arms. She consulted several physicians, all of whom agreed that her problem could be resolved through a reduction mammaplasty or breast reduction surgery. Plaintiff and her physicians requested coverage for the procedure from the defendant through her husband's pension plan but were denied because the defendant determined that the procedure was not medically necessary under its interpretation of the plan.[2]

Tecumseh Products has designated Aetna Life Insurance Company as its claim administrator.[3] Accordingly, Aetna has been delegated the responsibility for determining whether a requested service is medically necessary.

At the time she submitted her claim for preauthorization, plaintiff was a sixty year old woman with a height of 5'6" and a weight of 218 pounds. On January 27, 1994, Dr. Paul H. Izenberg ("Dr. Izenberg"), plaintiff's surgeon, submitted a request to Tecumseh Products for preauthorization of reduction mammaplasty on behalf of Mrs. Bancroft. Dr. Izenberg's request indicated that plaintiff exhibited chronic neck and back pain and shoulder grooving, she had difficulty lifting or pinching, that her breast size limited her activity, and that a reduction mammaplasty would relieve those symptoms. Sue Ellen Sedery ("Sedery") Senior Cost Containment Analyst at Aetna, processed the request and performed Aetna's initial evaluation of whether breast reduction surgery was medically necessary for Mrs. Bancroft. Ms. Sedery consulted Aetna's on-line system (the "Central Health Policy Library" or "CHPL") which contains the guidelines that are used by all Aetna employees to evaluate an identified diagnosis for medical necessity. The CHPL guidelines provide for preauthorization or coverage of breast reduction surgery when medical necessity is documented by at least one of the following conditions prior to surgery:

1. severe pain in the breast not relieved by conservative measures (e.g. proper brassiere support) or withdrawal of the cause of the pain and/or drug therapy.

2. severe upper back and/or shoulder pain determined not to be of musculoskeletal origin (e.g., arthritis, spondylitis) and not relieved by an adequate trial of *conservative measures* (e.g. proper brassiere support, physical therapy, postural modifications, etc.; if the patient is obese, weight loss.)

3. skin breakdown (massive infection, tissue necrosis, slough, ulceration, and/or hemorrhage) overlying breast or inframammary fold not relieved or controlled by dermatological treatments and conservative measures.

(emphasis added).

The CHPL guidelines require disapproval of preauthorization or coverage if:

(1) the primary purpose and/or result of the operation is to improve, alter or enhance appearance for psychological, emotional or other reasons;

(2) when the patient is more than 20% over ideal body weight (refer to ideal weight chart in CCM 0089 [4]);

For a service to be determined as necessary for medical care, it must be widely accepted by medical professionals in the United States as *effective, appropriate* and *essential* under recognized health care standards. (emphasis added)

---

1. Macromastia is an enlargement of the breasts caused by hormonal factors or obesity.

2. The relevant plan language provides:

   Covered charges include only those incurred for services or items specifically recommended by a licensed physician as necessary for the diagnosis, care or treatment of a physical or mental condition, and falling within Plan guidelines.

3. Benefits paid from this ERISA plan are paid by the employer, Tecumseh Products—not by Aetna.

4. "CCM 0089" stands for Claim Committee Minute 089.

(3) or delivery is imminent in the presence of gigantomastia of pregnancy.

(emphasis added)

Following the provisions set forth in the CHPL guidelines, Ms. Sedery requested the following information from Dr. Izenberg on March 4, 1994: Mrs. Bancroft's history and physical condition, his office notes, and pre-operative photographs. On March 28, 1994, Dr. Izenberg provided Aetna with his office notes and pre-operative photographs. He also informed Aetna that Mrs. Bancroft was 5′6″ with a weight of 218 pounds.

After receiving this information, Ms. Sedery determined that surgery was not medically necessary because Mrs. Bancroft was more than 20% over her maximum ideal weight as set forth in Claim Committee Minute 089. For this reason, Ms. Sedery denied Mrs. Bancroft's request for preauthorization in a letter dated April 6, 1994.

On June 20, 1994, Aetna received Mrs. Bancroft's first request for reconsideration of the benefits determination. Along with her request, Mrs. Bancroft provided four letters for review: the letter from Dr. Izenberg that was submitted with her initial request for preauthorization. A letter from James R. Gilsdorf, M.D. ("Dr. Gilsdorf") a general surgeon, dated April 15, 1994, who had examined plaintiff and stated that he had observed in plaintiff a significant stoop caused by the macromastia, that he had concern regarding the weight of her breasts causing upper extremity paraesthesia, and that her surgery could not be considered cosmetic. A letter from Anne Benedict of Child & Family Service dated May 4, 1994. A letter from Charles R. Lyon, D.O. ("Dr. Lyon"), dated May 23, 1994, plaintiff's family physician for many years, who stated that plaintiff had chronic back and arm pain for several years, had significant mammary hypertrophy and that the reduction mammaplasty would relieve her back pain. On July 7, 1994, Mrs. Bancroft's request for preauthorization was referred to Dr. Thomas Felger, an indepen-dent medical examiner for consideration of medical necessity. Based upon the materials submitted by plaintiff, Dr. Felger determined that breast reduction surgery was not a medically necessary service, due to Mrs. Bancroft's weight of 218 pounds.[5] On August 8, 1994, Ms. Sedery again denied Mrs. Bancroft's request.

On August 9, 1994 Tecumseh Products forwarded two additional medical opinions that were allegedly related to plaintiff's breast reduction surgery and again requested reconsideration of Aetna's decision to deny preauthorization for the surgery. On August 16, 1994, Ms. Sedery forwarded the claim file to Dr. Charles Polivy of Aetna's Medical Review Unit for review by the Medical Director.

After his review of all the materials submitted by Mrs. Bancroft and her physician, Dr. Polivy concluded that the proposed treatment was not medically necessary. Specifically, Dr. Polivy noted:

Sixty year old female with orthopedic and neurosurgical evaluations by two specialists note only lower back lumbar spinal stenosis. No upper back or cervical findings mentioned. Previous compression syndrome of the wrist and hand do not reflect neck and upper thoracic pathology. *Plastic surgeon notes patient requests facial cosmesis with reduction mammoplasty.*

The age of the patient would certainly explain some of the upper torso complaints with 5′6″ 218 pounds. No back x-rays to confirm upper body contour and shoulder levels or back. No photos AP or lateral. No intertrigo recorded as findings and fails the guidelines. Would consider this cosmetic rather than functions. (emphasis added)

Ms. Sedery again informed Dr. Izenberg in a letter dated August 18, 1994, that Aetna had concluded that Mrs. Bancroft's request for breast reduction surgery was not a medically necessary service and that the surgery was not a covered benefit. This was Aetna's

5. Dr. Felger's documented analysis and conclusion consisted of only the written statement "At 218 lbs—No".

final denial of Mrs. Bancroft's request for preauthorization of breast reduction surgery. Plaintiff and her husband obtained a personal loan to pay for the procedure. Mrs. Bancroft underwent the procedure on October 10, 1994. Following the procedure, Mrs. Bancroft requested that defendants reimburse plaintiffs for the cost of the surgery. Aetna has continued to deny Mrs. Bancroft' request for coverage of this procedure on the basis of the exclusion of coverage for "cosmetic" surgery.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling

the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

## III. Standard of Review

If an employee benefits plan gives a plan administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, then a district court reviews the decision to deny benefits under an arbitrary and capricious

standard. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). *See also Livingston v. Central States,* 900 F.Supp. 108 (E.D.Mich.1995). The Sixth Circuit has interpreted *Firestone* to require that the plan "expressly" give discretionary authority to the administrator. *Johnson v. Eaton Corp.,* 970 F.2d 1569, 1571 (1992). The parties herein agree that the plan under which plaintiff's claim was submitted does not provide defendants nor their fiduciary with discretion to interpret or construe the terms of the plan. The standard of judicial review in this matter, therefore, is the *de novo* standard rather than the arbitrary and capricious standard. Accordingly, this court is to review Aetna's decision "without deference" and decide whether it agrees with it, "based upon the record before the administrator." *Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir.1990).

## IV. Analysis

■ While not raised by the plaintiffs in their pleadings, this court, at the outset, finds that defendant has violated ERISA by failing to comply with the procedural requirements of section 1133.[6] Section 1133 provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The regulations promulgated under this section require that the written notice of denial include:

(1) *The specific reason or reasons for the denial;*

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) *A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;* and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f) (emphasis added). In the present case, all three letters notifying plaintiff that her claim had been denied failed to comply with 29 C.F.R. § 2560.503–1(f). Those letters, dated April 6, 1994, August 8, 1994 and August 18, 1994 substantially read as follows:

This is to advise you that the proposed treatment as described in your letter, bilateral reduction mammoplasty (CPT 19318), would not appear to be a covered expense. The benefits plan under which this patient is insured excludes coverage of expenses for services or supplies that are not necessary for the treatment of an accidental bodily injury or disease.

Our decision in this matter is based on our interpretation of the treatment plan as described in your correspondence, and on the current plan of benefits. The decision as to whether or not to proceed with this treatment is, of course, strictly between the patient and you.

■ With respect to the first requirement under § 2560.503–1(f), the mere statement of the conclusion that "the proposed treatment . . . would not appear to be a covered expense" because it is "not necessary" does not constitute a "specific reason" for the denial, as that term is used in the regulations. *VanderKlok v. Provident Life and Accident Ins. Co.,* 956 F.2d 610, 616–17 (6th Cir.1992); *Rakoczy v. Travelers Ins. Co.,* 914 F.Supp. 166, 171 (E.D.Mich.1996). The notification merely stated that the defendant believed that the treatment was not covered under its interpretation of the plan instead of informing the plaintiff of *why* defendant so believed. *See*

---

**6.** Plaintiffs' counsel did raise this issue at oral argument. However, this court had, prior to the hearing, conducted its own research and analysis

on the issue of a procedural violation of ERISA and was not persuaded by either party's remarks at oral argument.

*Grossmuller v. Int'l Union,* 715 F.2d 853, 858 (3d Cir.1983). This requirement could have been satisfied by notifying plaintiff of the defendant's interpretation of the Plan's "effective, appropriate and essential" language, the specific evidence upon which the defendant based its conclusion, and why the defendant believed the evidence supported its conclusions. *See id.* Specifically, the defendant should have notified plaintiff of their guidelines for determining whether breast reduction surgery is medically necessary and then notified her that they believed that her condition did not satisfy any of those guidelines and what evidence supported their conclusion.

With respect to the third requirement, defendant's notification did not provide plaintiff with a description of the material or information that plaintiff should adduce to perfect her claim or an explanation of why such information would be helpful, to wit: the defendant should have informed plaintiff that she needed to first try more "conservative treatments," i.e. weight loss, before undergoing a breast reduction operation.

■ Although the remedy for a violation of ERISA procedures is generally a remand to the defendant for a full and fair review of its denial, *see Wolfe v. J.C. Penney, Inc.,* 710 F.2d 388, 393 (7th Cir.1983), in the instant case, such a remand would clearly be futile. It cannot be expected that plaintiff would *now* be able to proffer evidence that she attempted weight loss prior to undergoing her breast reduction as there is no reason to believe that she knew that she was required to provide such evidence at that time. The time to proffer that evidence would have been upon a *proper* denial of benefits by the defendant that informed her of that requirement. That, of course, can no longer occur in this case.

The Sixth Circuit in *VanderKlok* recognized that a remand to the defendant is not always the required remedy for a procedural violation of ERISA. *VanderKlok,* 956 F.2d at 617. The Sixth circuit stated: "Because [the defendant] failed to give appropriate notice, it is not entitled to the protections concerning administrative review which form the basis of *Perry.*" Instead, the *VanderK-* *lok* court permitted the district court to conduct the review and allowed plaintiff to submit additional evidence. *Id.* As such, this court will consider those materials submitted by plaintiff concerning the prevailing standard of medical practice even though that evidence was not before the administrator.

■ After conducting a *de novo* review of the administrator's decision, this court finds that the defendant improperly denied plaintiff benefits under the plan.

First, this court finds that the defendant did not adhere to its own Plan guidelines. Clinical Policy 93–5, which pertains to reduction mammaplasty, requires that:

ANY FINAL DECISION WILL BE MAKE BY A REVIEW PHYSICIAN BASED ON *HIS/HER CLINICAL KNOWLEDGE, KNOWLEDGE OF THE CURRENT SCIENTIFIC LITERATURE PERTINENT TO THE GIVEN DIAGNOSIS,* AND THE MEDICAL CONDITION OF THE PATIENT IN QUESTION

(emphasis added) At deposition, however, Dr. Polivy, the reviewing physician admitted that he had no current clinical experience for the medical condition at issue and that he had not stayed current with the medical literature addressing that condition. As to Dr. Polivy's "clinical experience," Dr. Polivy testified that he had not performed a reduction mammaplasty of any kind since "1950 or 1960." As to Dr. Polivy's knowledge of current literature, he testified that he had not read any journal articles on reduction mammaplasty in the last five years, had never heard of the textbook *Reduction Mammaplasty* and was not familiar with any of the medical literature correlating weight management with treatment for macromastia during the last ten years. Moreover, Dr. Polivy was unable to support any of his medical opinions with specific reference to medical literature, current or otherwise. As such, Dr. Polivy's review cannot reasonably be said to meet any basic qualifications under the Plan or under the applicable policy guidelines.

■ In addition, it appears that when plaintiff met with her plastic surgeon regard-

ing breast reduction surgery, she also inquired about a facelift. Dr. Polivy acknowledged that plaintiff's inquiry of her physician concerning facelifts "had a great influence on his decision" to deny coverage. Consideration of that information is not authorized under any guideline and was irrelevant to a proper evaluation of the necessity for plaintiff's surgery. It does not follow that simply because plaintiff made a brief inquiry regarding facelift surgery while consulting with her surgeon about relief for her macromastia, that, therefore her interest in a reduction mammaplasty is merely cosmetic.

Second, despite defendants contentions to the contrary, that plaintiff failed to provide objective medical evidence showing that she fell into any to the three categories set forth in Clinical Policy 93–5, the record is replete with objective evidence of functional symptoms of macromastia as observed independently by three physicians. For instance, Dr. Gilsdorf, a general surgeon who had examined plaintiff, stated that he had observed a significant stoop in plaintiff caused by the macromastia, that he had concern regarding the weight of her breasts causing upper extremity paresthesia, and that her surgery could not be considered cosmetic. In addition, Dr. Lyon, plaintiff's family physician for many years, stated that plaintiff has had chronic back and arm pain for several years, had significant mammary hypertrophy and that the reduction mammaplasty would relieve her back pain. Finally, Dr. Izenberg, plaintiff's surgeon indicated that plaintiff exhibited chronic neck and back pain and shoulder grooving, she had difficulty lifting or pinching, that her breast size limited her activity, and that a reduction mammaplasty would relieve these symptoms. Instead, defendant, without itself conducting a physical examination of plaintiff, elected to discount the findings of the examining physicians and surgeon and deny plaintiff benefits.

Finally, the defendant's conclusion that "standard medical practice requires that a patient who exceeds her maximum ideal weight by more than 20% first attempt to reduce the size of her breasts by trying conservative measures, for example weight reduction, prior to surgery," is not well founded. Nowhere in defendant's supporting exhibits are they able to point to such a definitive medical standard. The best defendant can do is a reference to a 1989 book by Seymour Schwartz entitled Principles of Surgery, which states: "Obesity is a common finding [upon performing a breast examination for macromastia], and the patient is advised to lose weight before considering surgery." Defendant also refers to a 1986 article by Michael Pers that concludes, after treating 198 overweight patients (out of a total of 365 patients), that: "Primary complications from breast reduction surgery were more frequent in overweight patients, and preoperative weight regulation is recommended."[7] However, neither of these references support the defendant's conclusion that a patient who exceeds her maximum ideal weight by more than 20% must first attempt weight reduction prior to surgery.

On the other hand, plaintiff proffers a bevy of recent studies which conclude, irrespective of obesity or lack thereof, that breast reduction is an effective treatment to relieve back and neck pain. For instance, Dr. Federico Gonzalez, et al. in a June, 1993 article entitled Reduction Mammaplasty Improves Symptoms of Macromastia, in the Journal of Plastic and Reconstructive Surgery concluded that:

> The data presented in this study demonstrate that reduction mammaplasty significantly decreases both the frequency and severity of pain and discomfort in macromastia patients to equivalent or lower levels than present in a control population. The cumulative pain symptoms of each patient in our study were diminished by reduction mammaplasty surgery, and pain and discomfort were totally eliminated in 25 percent of patients.

\* \* \* \* \* \*

Symptom improvement with reduction mammaplasty was independent of patient height/weight ratios. The notion that a tall, thin patient with macromastia should

7. Interestingly, that study also concluded that "reduction mammaplasty is not essentially cosmetic, but rather relieves the patient of real discomfort."

benefit more from reduction mammaplasty than a shorter, heavier patient has never been demonstrated and is not borne out by our results. This raises the question regarding weight loss as an effective therapy for macromastia. Although weight loss is often prescribed, it has never been demonstrated to reduce the pain symptoms of macromastia patients. While our study does not specifically address the issue of weight loss, our study group contained individuals of numerous body types, and all were improved symptomatically by the reduction mammaplasty procedure.

*Id.* at p. 1274. Also in the Journal of Plastic and Reconstructive Surgery, a December 30, 1993 article entitled *Breast Reduction for Symptomatic Macromastia: Can Objective Predictors for Operative Success Be Identified?* by Dr. Anne P. Miller et al. which stated that:

> What was clear was that those patients with physical symptoms of macromastia—headache, neck, shoulder, and back pain, rashes beneath the breast, deep bra strap grooves, and low backache—were almost always improved by reduction mammaplasty. These patients frequently attained a more normal body weight, often ceased to use pain medication, and increased their activity levels.

### CONCLUSION

It would appear that until a more objective tool can be developed to define potential candidates for surgery, *any* patient having the standard symptoms associated with macromastia should be considered a candidate for reduction mammaplasty regardless of the amount of tissue to be removed.

*Id.* at p. 82. (emphasis) It is evident from these references and others [8] that reduction mammaplasty is considered an effective treatment for plaintiff's symptoms irrespective of her weight. While it is true that none

of these references specifically addresses the issue of weight loss, it cannot be said that any of the defendant's references does either. As such, the issue of whether weight loss must be attempted prior to breast reduction is, at least, an open question while the benefits of such a reduction, to any person, has been resoundingly proven. Therefore, this court finds that the defendant's reliance on their conclusion that accepted medical practice required plaintiff to first address her breast size by trying a more safe and conservative measure, such as weight loss, was improper.

### V. Conclusion

In sum, this court concludes that the defendant improperly denied, as not medically necessary, plaintiffs' request for coverage under the benefits plan.

### *ORDER*

**IT IS HEREBY ORDERED** that the plaintiffs', VIOLETTA NADINE BANCROFT and GEORGE E. BANCROFT, motion for summary judgment is **GRANTED** in its entirety and the defendant's, THE TECUMSEH PRODUCTS COMPANY, motion for summary judgment is **DENIED** in its entirety.

**IT IS HEREBY FURTHER ORDERED** that defendant, THE TECUMSEH PRODUCTS COMPANY **PAY** plaintiffs, VIOLETTA NADINE BANCROFT and GEORGE E. BANCROFT, benefits due under the Plan, including interest from the date of plaintiff's reduction mammaplasty.

**IT IS HEREBY FURTHER ORDERED** that defendant, THE TECUMSEH PRODUCTS COMPANY **PAY** plaintiffs, VIOLETTA NADINE BANCROFT and GEORGE E. BANCROFT, their **COSTS** and **FEES**, including reasonable attorney's fees.

**SO ORDERED.**

---

8. A study published in the Annals of Plastic Surgery which examined the effect of reduction mammaplasty on long-term morbidity related to chronic neck and back pain concluded that seventy-four percent of patients were free of neck pain postoperatively versus 21% preoperatively. The study noted that similar results were obtained regarding back pain. The study also noted that 81% of those reporting severe neck or back pain before surgery had only mild or no pain after surgery.

*JUDGMENT*

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND AD-JUDGED** that the defendant, THE TECUMSEH PRODUCTS COMPANY **PAY** plaintiffs, VIOLETTA NADINE BANCROFT and GEORGE E. BANCROFT, benefits due under the Plan, including interest from the date of plaintiff's reduction mammaplasty.

**IT IS HEREBY FURTHER ORDERED AND ADJUDGED** that defendant, THE TECUMSEH PRODUCTS COMPANY **PAY** plaintiffs, VIOLETTA NADINE BANCROFT and GEORGE E. BANCROFT, their **COSTS** and **FEES,** including reasonable attorney's fees.

**IT IS FURTHER ORDERED** that the clerk of the court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

**SO ORDERED.**